UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TOMAS NAVARRETTE,

              Plaintiff,

    v.

5 - KEYS CHARTER SCHOOL, et al.,

              Defendants.

Case No.  20-cv-02579-PJH

**ORDER RE: DEFENDANTS'
MOTIONS TO DISMISS AND/OR
TRANSFER**

Dkt. Nos. 36, 37

Before the court are (1) defendant Five Keys Schools and Programs' motion to dismiss (Dkt. 37-1) and (2) defendant Butte County's motion to dismiss, or in the alternative, transfer for improper venue, or in the alternative, transfer for convenience (Dkt. 36-1).  The motions are fully briefed and suitable for decision without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

I.    **Background**

    A.    **Parties**

Plaintiff Tomas Navarrette (aka Mr. T. Navarrette El), proceeding pro se, is currently incarcerated at Santa Rita Jail.  This lawsuit is unrelated to the conditions of or reasons for his incarceration.  Defendant Five Keys Schools and Programs (erroneously named by plaintiff as "5-Keys Charter School," and hereafter "Five Keys") is a San Francisco-based nonprofit corporation and charter school that formerly employed Mr. Navarrette.  Defendant County of Butte, California ("Butte County") is a local California government.  Defendants Oscar Garcia and Dave Bates, sued in their individual

United States District Court
Northern District of California

1   capacities, were plaintiff's supervisors during his employment at Five Keys.  Garcia and

2   Bates ("individual defendants") are named on page five of the amended complaint, but

3   summonses were not issued for them and they have not otherwise appeared in this

4   action.  California Department of Transportation (erroneously sued and served as "State

5   of California (Caltrans)") was originally named as a defendant but as already been

6   dismissed from this case.  Dkt. 55.

7        **B.     Factual Narrative**

8        Mr. Navarrette was employed by Five Keys from July 2, 2019, until December 18,

9   2019, as a supervisor for Cal-Crew, a program established to perform road and highway

10  cleanup and maintenance.  FAC (Dkt. 30) at 3-4, ¶ 2, 4.  The program was a new venture

11  for Five Keys to perform roadside maintenance work on behalf of Caltrans.  Dkt. 30 at 6.

12  Mr. Navarrette's supervisors at Five Keys were Oscar Garcia and Dave Bates.  Dkt. 30 at

13  5.

14       Mr. Navarrette's regular work hours were 6:45 am to 3:15 pm, Monday through

15  Friday.  Dkt. 30 at 7.  Supervisors Garcia and Bates strictly enforced the work hours.  Dkt.

16  30 at 11 ("My clock out was 3:15 pm explicitly. Which was absolutely and positively

17  enforced by A) Oscar Garcia and B) David Bates.").

18       Mr. Navarrette had difficulty performing all the work required for his position within

19  the designated workday, and he worked many hours beyond the time he was supposed

20  to clock out.  Dkt. 30 at 11-15.  After his first three weeks of work, Mr. Navarrette told

21  Garcia and Bates that he regularly worked after hours to complete his work, and Bates

22  instructed him to clock out at 3:15 pm because there was no money in the budget for

23  overtime.  Dkt. 30 at 15.  When Mr. Navarrette and his colleague proposed "banking"

24  overtime hours to take time off later, they were told that the only solution was "to increase

25  [their] efficiency."  Dkt. 30 at 16-17.  Mr. Navarrette protested, stating that he did not want

26  to work overtime unpaid and that he did not have the time to do so because of personal

27  obligations.  Dkt. 30 at 17.  Mr. Navarrette states that "no solution" was offered to his

28  complaints, but that he nonetheless continued to work off the clock.  Dkt. 30 at 18.  Mr.

1  Navarrette states that "every 3-4 weeks" he would discuss the overtime issue with

2  Garcia, and he was told "to be more efficient."  Dkt. 30 at 20.

3      Mr. Navarrette alleges that during the time of his employment, defendant Butte

4  County contracted with Five Keys and its subdivision Cal-Crew in an official capacity.[1]

5  Dkt. 30 at 5.  Moreover, Mr. Navarrette generally alleges that defendant Butte County

6  was directly involved in the scheduling, regulations, functions, and day to day operations

7  of the Cal-Crew division.  Dkt. 30 at 5.  Aside from these allegations, Mr. Navarrette does

8  not allege any specific involvement of Butte County in the alleged denial of overtime pay

9  for hours worked.

10     Mr. Navarrette was terminated on December 18, 2019.  Dkt. 30 at 4.  Soon after

11  his termination, he demanded payment for unpaid overtime hours worked and provided

12  Five Keys with a schedule of the hours worked.  Dkt. 30 at 21.  Five Keys compensated

13  Mr. Navarrette for 20 hours at a rate of $36 per hour, or 1.5 times his standard hourly rate

14  of $24 per hour, for a total of $720.  Dkt. 30 at 21.  In his prayer for relief, Mr. Navarrette

15  seeks payment for the additional overtime hours he worked, some 418 hours beyond the

16  20 already compensated, plus $35,052 in "pain and suffering."  Dkt. 30 at 33.  Mr.

17  Navarrette seeks $10,000 in punitive damages and declaratory relief as well.  Dkt. 30 at

18  33.

19     **C.    Procedural History**

20     Mr. Navarrette filed his original complaint on April 14, 2020.  Dkt. 1.  The original

21  complaint named in the caption defendants Five Keys (as his former employer), along

22  with Butte County and Caltrans (as entities contracting with Five Keys for Caltrans

23  maintenance projects).  Dkt. 1.  The phrase "et al." is also included in the list of

24

25  [1] Butte County notes the following discrepancy in a footnote: "[Butte] County would
   further note that, on March 11, 2021 it obtained a copy of the alleged contract between
26  Butte County and Five Keys. In reality, Five Keys contracted with the Butte County Office
   of Education, which is a state agency governed by the Butte County Board of Education.
27  See, Cal. Educ. Code § 1000.  As such, Butte County does not believe that it has
   properly been named in this action."  Dkt. 42 at 4 n.1.  Because the court dismisses Butte
28  County from this action on other grounds, the court does not delve into which entity is the
   proper defendant.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   defendants, but it is unclear from the complaint who might be included within the "and

2   others" designation.  Following some delay, defendants Five Keys, Butte County, and

3   Caltrans were eventually served.  In response to a motion to dismiss, Mr. Navarrette filed

4   a first amended complaint ("FAC"), the currently operative complaint, on February 5,

5   2021.  Dkt. 30.

6          Butte County moved to dismiss or transfer on March 1, 2021.  Dkt. 36.  Five Keys

7   moved to dismiss the FAC on March 2, 2021.  Dkt. 37.  These two are the motions now

8   under consideration.

9          Five Keys opposed Butte County's motion to transfer by brief filed March 15.  Dkt.

10  40.  Butte County replied in support of transfer on March 18.  Dkt. 42.

11         Five Keys filed a "reply" on March 23 in support of its motion to dismiss, arguing

12  that the motion to dismiss should be granted because plaintiff had missed the deadline to

13  file a response.  Dkt. 44.

14         Mr. Navarrette then filed motions for extensions of time to respond to the motions

15  of both Butte County and Five Keys.  The court granted the extensions.  Dkt. 47.  Mr.

16  Navarrette filed his oppositions within the extension period on April 7, 2021 (they were

17  not entered by the clerk until April 16).  Dkt. 50 & 51.

18         Separately on April 7, 2021, Caltrans filed its own motion to dismiss.  Dkt. 48.  This

19  response from Caltrans followed months of confusion and protests of imperfect service

20  by the U.S. Marshals Service.  See Dkt. 29, 35, & 39.  Mr. Navarrette filed a response to

21  the motion from Caltrans on April 22, stating that he did not object to the removal of

22  Caltrans from the lawsuit.  Dkt. 52.  The court dismissed Caltrans by order entered April

23  23.  Dkt. 55.

24         Finally, on April 23, Five Keys filed a reply for its motion to dismiss (Dkt. 53), but

25  Butte County did not file a reply.  Mr. Navarrette filed an additional "reply" in response to

26  Five Keys' reply brief, entered by the clerk on May 13, 2021 (Dkt. 56).[2]

27  _____

28  [2] The Local Rules provide for a motion, an opposition, and a reply.  See Civil L.R. 7-3.
    Neither the Local Rules nor the Federal Rules provide the right to file a "surreply," an

1    No summonses were issued for defendants Garcia and Bates.  Five Keys says

2    about them in a footnote, "Garcia and Bates have not appeared, and it is unclear whether

3    Garcia and Bates are even aware of the complaint.  Nonetheless, Five Keys believes that

4    the Court should dismiss all claims, including those against Garcia and Bates, at least on

5    the grounds discussed herein."  Five Keys MTD at 7, n.1 (Dkt. 37-1 at 7).

6    In sum, this order addresses (1) the motions to dismiss of defendants Five Keys

7    and Butte County, and (2) the court's sua sponte dismissal of defendants Garcia and

8    Bates.  Because Butte County is dismissed, the court does not address its alternative

9    requests for transfer of venue.

10   **II.     Motions to Dismiss**

11   Both Five Keys and Butte County move to dismiss the FAC for failure to state a

12   claim under Federal Rule of Civil Procedure 12(b)(6).

13   Mr. Navarrette advances the following claims in his FAC: violation of Title 42

14   U.S.C. § 1983 (Equal Protection); violation of the Fair Labor Standards Act ("FLSA") (29

15   U.S.C. § 203(1)); violation of California Labor Code section 510; and violation of rights as

16   an "internationally protected person" under Title 18 U.S.C.A. § 1116.  Unpaid overtime

17   hours serve as the foundation for all the claims.  Mr. Navarrette advances the following

18   theories:

19   - First cause of action: Mr. Navarrette alleges his Equal Protection rights

20     were violated by defendants' failure to compensate his overtime hours or

21     allow for a flexible work schedule, unlike other Five Keys employees;

22   - Second and third causes of action: Mr. Navarrette alleges that he is owed

23     for the three hours of overtime he worked every single day of the six

24     months he worked for the Cal-Crew program; and

25   - Fourth cause of action: Mr. Navarrette alleges that his dignity as an

26

27   _____

28   additional reply filed after a motion has been fully briefed.  Mr. Navarrette did not request,
     nor did the court grant, leave to file a surreply.  Therefore, the court does not consider the
     surreply filed by Mr. Navarrette on May 13, 2021.

United States District Court
Northern District of California

1    "internationally protected person" was violated by defendants' failure to

2    compensate him for overtime hours worked.

3 These arguments are discussed in turn.

4    **A.    Legal Standard**

5       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the

6 legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191,

7 1199-1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that

8 a complaint include a "short and plain statement of the claim showing that the pleader is

9 entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule

10 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient

11 facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th

12 Cir. 2013).

13       While the court is to accept as true all the factual allegations in the complaint,

14 legally conclusory statements, not supported by actual factual allegations, need not be

15 accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  The complaint must proffer

16 sufficient facts to state a claim for relief that is plausible on its face.  Bell Atl. Corp. v.

17 Twombly, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).

18       "A claim has facial plausibility when the plaintiff pleads factual content that allows

19 the court to draw the reasonable inference that the defendant is liable for the misconduct

20 alleged."  Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not

21 permit the court to infer more than the mere possibility of misconduct, the complaint has

22 alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  Id. at 679.  Where

23 dismissal is warranted, it is generally without prejudice, unless it is clear the complaint

24 cannot be saved by any amendment.  Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir.

25 2005).

26       Although pro se pleadings are to be liberally construed, a plaintiff must present

27 factual allegations sufficient to state a plausible claim for relief.  Hebbe v. Pliler, 627 F.3d

28 338, 341-42 (9th Cir. 2010).  Moreover, the court cannot consider new facts alleged in a

1    plaintiff's opposition to a defendant's motion to dismiss because a memorandum is not a

2    pleading under Rule 7(a).  See Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1

3    (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not

4    look beyond the complaint to a plaintiff's moving papers, such as a memorandum in

5    opposition to a defendant's motion to dismiss.").

6         **B.    First Cause of Action: Section 1983 (Equal Protection)**

7         Mr. Navarrette's claim for violation of Title 42 U.S.C. § 1983 is based on a theory

8    that defendants have violated his right to equal protection of the law as guaranteed by the

9    14th Amendment to the U.S. Constitution.  In relevant part, § 1983 provides that:

10                  Every person who, under color of any statute . . . of any State
11                  or Territory or the District of Columbia, subjects . . . any citizen
                    of the United States or other person within the jurisdiction
12                  thereof to the deprivation of any rights, privileges, or immunities
                    secured by the Constitution and laws, shall be liable to the party
13                  injured....

14   42 U.S.C. § 1983.

15        Section 1983 "is not itself a source of substantive rights, but merely provides a

16   method for vindicating federal rights elsewhere conferred."  Graham v. Connor, 490 U.S.

17   386, 393-94 (1989).  "To establish § 1983 liability, a plaintiff must show both

18   (1) deprivation of a right secured by the Constitution and laws of the United States, and

19   (2) that the deprivation was committed by a person acting under color of state law."  Tsao

20   v. Desert Palace, Inc., 698 F.3d 1128, 1138 (9th Cir. 2012); see also West v. Atkins, 487

21   U.S. 42, 48 (1988).

22        **1.    Section 1983 and Deprivation of Rights**

23        To state a claim under § 1983 for violation of the Equal Protection Clause, plaintiff

24   must first show that "defendants acted with an intent or purpose to discriminate against

25   the plaintiff based upon membership in a protected class, and that plaintiff was treated

26   differently from persons similarly situated."  Lam v. City and Cty. of San Francisco, 868

27   F.Supp.2d 928, 951 (N.D. Cal. 2012), aff'd 565 F.App'x 741 (9th Cir. 2014) (citation and

28   internal quotation marks omitted).  A plaintiff satisfies this standard by alleging: "(1) that

1    the plaintiff was treated differently from others similarly situated; (2) this unequal

2    treatment was based on an impermissible classification; (3) that defendant acted with

3    discriminatory intent in applying this classification; and (4) the plaintiff suffered injury as a

4    result of the discriminatory classification." Id. at 951.

5        Five Keys argues that the FAC does not "allege how Plaintiff's constitutional rights

6    to equal protection under the laws were violated, how such treatment was based on

7    arbitrary classification within an identifiable group, or the role of each Defendant therein."

8    Dkt. 37-1 at 10.  Mr. Navarrette argues in response that he was denied equal protection

9    where, unlike other Five Keys employees, he was not paid for overtime hours worked nor

10   was he allowed to "bank" hours and work an alternative schedule.

11       Here, the FAC fails to state a claim for violation of the Equal Protection Clause.

12   The FAC does not allege how Mr. Navarrette's constitutional rights to equal protection

13   under the laws were violated.  The FAC does not allege facts showing that defendants

14   acted with an intent or purpose to discriminate against him based upon his membership

15   in a protected class.  Regardless how Five Keys permitted other staff to structure their

16   work hours, the FAC does not state how Mr. Navarrette was treated differently by either

17   defendant based on his membership in a protected class.  The only potential protected

18   class mentioned by Mr. Navarrette is his religion (Islam) and membership in the Moorish

19   Science Temple of America, but at no point does he suggest that he was discriminated

20   against on this basis.[3]  Mr. Navarrette has not stated an actionable deprivation of his

21   constitutional rights under the Equal Protection Clause.  The court does not consider the

22   second prong of § 1983 analysis, whether Five Keys or Butte County deprived Mr.

23   Navarrette of his rights while rights acting under color of state law, because the first

24   prong is not satisfied.  The first cause of action under § 1983 is dismissed.

25                    **2.      Section 1983 and Displacement by Other Claims**

26       Section 1983 itself does not confer substantive rights but rather "provides a cause

27   _____

28   [3] On the contrary, Mr. Navarrette argues elsewhere that his membership in the Moorish
     Science Temple of America should afford him special (rather than equal) protection.

United States District Court
Northern District of California

of action for violations of federal statutes as well as the Constitution." Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995) (quoting Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 508 (1990)).  An alleged violation of federal law thus may not be vindicated under § 1983 if "(1) the statute does not create an enforceable right, privilege, or immunity, or (2) Congress has foreclosed citizen enforcement in the enactment itself, either explicitly, or implicitly by imbuing it with its own comprehensive remedial scheme." Buckley, 66 F.3d at 190.  "When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." Middlesex Co. Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 20 (1981); see also Vinson v. Thomas, 288 F.3d 1145, 1155 (9th Cir. 2002).  Said another way, a § 1983 claim cannot stand on top of a statute that has its own defined scheme for legal relief—the § 1983 claim may be foreclosed.

The Ninth Circuit cases considering the foreclosure of a § 1983 claim primarily involve the Americans with Disabilities Act and Rehabilitation Act, both of which provide comprehensive remedial schemes that obviate the need for § 1983 enforcement.  See Vinson, 288 F.3d at 1156.  The Ninth Circuit has not considered whether the FLSA similarly serves as the exclusive mechanism for enforcement of FLSA rights, but other circuits to consider the issue have found that the FLSA's remedial scheme forecloses lawsuits under § 1983.  See, e.g., Kendall v. City of Chesapeake, Va., 174 F.3d 437, 439 (4th Cir.1999) ("We hold that the elaborate remedial scheme provided in the FLSA demonstrates a congressional intent to prohibit § 1983 actions to enforce such FLSA rights."); Levin v. Madigan, 692 F.3d 607, 620 (7th Cir. 2012) ("We have no quarrel with the notion that the FLSA is the sole remedy for the enforcement of FLSA rights . . .").

The FLSA provides a robust scheme for wronged employees.  See Torres v. Vitale, 954 F.3d 866, 872 (6th Cir. 2020), reh'g denied (Apr. 24, 2020).  Among its guarantees, it requires overtime pay at a rate of one and one-half times the normal rate for hours worked in excess of 40 within a given week. 29 U.S.C. § 207(a)(1).  The FLSA provides an enforcement scheme for its guarantees that includes civil private right of

9

United States District Court
Northern District of California

1   action for aggrieved employees (29 U.S.C. § 216(b)) along with criminal penalties for

2   willful violations (29 U.S.C. § 217(a)).

3          Here, the court agrees that the FLSA, given its comprehensive remedial scheme

4   for wronged employees, displaces Mr. Navarrette's § 1983 claim.  Plaintiff's framing of his

5   § 1983 claim, as a violation of Equal Protection rights, is premised entirely on an

6   allegation of unpaid overtime that can be fully addressed and resolved through the FLSA.

7   Mr. Navarrette offers no allegations supporting an Equal Protection violation nor any

8   other violation of federal law separate from the FLSA.  Rather, all the allegations pertain

9   to Mr. Navarrette's unpaid overtime hours and defendants' refusal to allow him greater

10  scheduling flexibility.  The specific remedies available to Mr. Navarrette for unpaid

11  overtime under the FLSA preclude the more general remedies he seeks through § 1983.

12  This serves as yet another ground for dismissal of plaintiff's first claim.

13         Because these various deficiencies cannot be cured by amendment, the first claim

14  for violation of § 1983 is dismissed with prejudice on this alternative ground, but with

15  prejudice.

16     **C.     Second and Third Causes of Action: Fair Labor Standards Act and**

17             **California Labor Code**

18         The second and third causes of action are here discussed together because they

19  are both wage-and-hour claims premised on the same theory.  Mr. Navarrette's second

20  cause of action, for violation of the FLSA, and his third cause of action, for violation of the

21  California Labor Code, seek recovery where he was only partially compensated for the

22  overtime hours he worked as a member of Cal-Crew.  The FLSA, particularly Title 29

23  U.S.C. § 207, "requires overtime pay of one and a half times an employee's hourly wage

24  for every hour worked over 40 hours in a week."  Landers v. Quality Commc'ns, Inc., 771

25  F.3d 638, 640 (9th Cir. 2014), as amended (Jan. 26, 2015).  California Labor Code

26  section 510 similarly requires overtime pay of one-and-a-half times an employee's hourly

27  wage for hours worked in excess of 40 in a week.

28         Title 29 U.S.C. § 203(1) is the "definitions" section of the FLSA, and it does not

1   provide a cause of action on its own.  While Mr. Navarrete cites to Title 29 U.S.C.

2   § 203(1) in his papers, he describes the alleged violation as defendants' failure to

3   compensate him for the time he worked in excess of 40 hours per week.  His allegations

4   are more appropriately considered under Title 29 U.S.C. § 207, the section regarding

5   maximum hours and overtime pay.

6              **1.    Sufficiency of Pleading**

7         In <u>Landers</u>, the Ninth Circuit considered whether the district court properly

8   dismissed plaintiff's minimum wage and overtime claims, brought under federal law, for

9   failure to allege sufficient facts.  771 F.3d at 639.  The panel in <u>Landers</u> described

10  plaintiff's complaint as alleging, in relevant part, the following: (1) plaintiff was employed

11  by defendant; (2) his employment was subject to FLSA's minimum wage and overtime

12  conditions; (3) he was not paid at the minimum wage; and (4) he was subjected to a

13  "piecework no overtime" wage system, in which he worked over forty hours per week

14  without overtime compensation.  <u>Id.</u> at 640, 645-46.

15        Before assessing the viability of these allegations, the <u>Landers</u> panel set forth a

16  detailed statement and explanation of the import of the <u>Twombly</u>/<u>Iqbal</u> plausibility

17  requirement to actions brought under FLSA.  <u>Id.</u> at 641-45.  After surveying the decisions

18  of other circuit courts determining the degree of detail necessary to state these claims

19  under FLSA, the <u>Landers</u> panel boiled down such requirements to the following rules:

20  •  To state a claim for overtime, a plaintiff must allege that he or she worked more

21     than 40 hours in a given workweek without being compensated for the overtime

22     hours worked during that workweek.  <u>Id.</u> at 644-45.

23  •  To state a claim for overtime, a plaintiff may allege an estimate of the length of her

24     average workweek during the applicable period, the average rate at which she

25     was paid, the amount of overtime wages she believes she is owed, or any other

26     facts that will permit the court to find plausibility.  <u>Id.</u> at 645.

27  •  To state a claim for overtime, a plaintiff is not required to estimate the total number

28     of overtime hours at issue.  <u>Id.</u>

1    Applying these rules to the complaint there under consideration, the <u>Landers</u> panel

2   held that plaintiff failed to state a claim for unpaid overtime and minimum wages.  <u>Id.</u>

3   Critically, it reasoned that plaintiff failed to provide "any detail regarding a given

4   workweek when [he] worked in excess of forty hours and was not paid overtime for that

5   given workweek and/or was not paid minimum wages."  <u>Id.</u> at 646 (emphasis added).

6    The <u>Landers</u> court only addressed FLSA claims, but federal courts in this state

7   have held that its reasoning applies to California Labor Code claims as well.  <u>Cook v.</u>

8   <u>Land O'lakes, Inc.</u>, 20-cv-553-none-SAB, 2020 WL 5633045, at *8 (E.D. Cal. Sept. 21,

9   2020), report and recommendation adopted, 20-cv-553-none-SAB, 2020 WL 5983346

10   (E.D. Cal. Oct. 8, 2020); <u>Tan v. GrubHub, Inc.</u>, 171 F.Supp.3d 998, 1006 (N.D. Cal.

11   2016); <u>see also</u> <u>Boyack v. Regis Corp.</u>, 812 F.App'x 428 (9th Cir. 2020) (affirming

12   dismissal of complaint where plaintiff failed to include any factual allegations of at least

13   one workweek that would support her state law wage and hour claims).

14    Five Keys cites <u>Landers</u> to argue that Mr. Navarrette's overtime claims should be

15   dismissed because he does not provide a reasonable estimate of overtime hours worked.

16   Five Keys adds that Mr. Navarrette's pleading of such specificity—that he worked

17   overtime every weekday, in every week, with additional hours on weekends—shows that

18   the allegations are not plausible.  Five Keys remarks, "While Plaintiff cannot be expected

19   to state his claim with 'mathematical precision,' in this instance such precision—at odds

20   with his own account—indicates a fabrication."   Dkt. 37-1 at 16.  In response to Five

21   Keys' argument that the FAC does not provide a reasonable estimate of overtime hours

22   worked, Mr. Navarrette contests that the FAC "defined a precise account of overtime

23   hours worked on an overtime basis producing 3 hours of overtime daily including

24   weekends."  Dkt. 51 at 11.

25    Here, the FAC does not plead with sufficient specificity a given workweek when

26   Mr. Navarrette worked in excess of 40 hours and was not paid overtime for that given

27   workweek.  The pleading does not meet the standard set out in <u>Landers</u>.  The blanket

28   allegation that Mr. Navarrette was not compensated for hours of overtime worked every

United States District Court
Northern District of California

United States District Court
Northern District of California

1   day, every week, for the entirety of his six-month employment not only lacks specificity, it

2   becomes implausible considering his other allegations.  Namely, this work schedule is

3   implausible where the FAC admits that he was instructed every few weeks to work more

4   efficiently to complete his work without exceeding 40 hours per week.  Therefore, the

5   court dismisses Mr. Navarrette's claims for violation of the FLSA and the California Labor

6   Code.

7                          **2.       Definition of Employer**

8          The FLSA defines an "employee" as "any individual employed by an employer,"

9   and defines an "employer" as "any person [or entity] acting directly or indirectly in the

10  interest of an employer in relation to an employee."  29 U.S.C. § 203(d), (e)(1).  Courts in

11  the Ninth Circuit apply an "economic reality" test to determine whether an individual was

12  an employee under the FLSA.  That test assesses the following four factors: "whether the

13  alleged employer (1) had the power to hire and fire the employees, (2) supervised and

14  controlled employee work schedules or conditions of employment, (3) determined the

15  rate and method of payment, and (4) maintained employment records."  Dawson v. Nat'l

16  Collegiate Athletic Ass'n/Pac-12 Conference, 932 F.3d 905, 910-11 (9th Cir. 2019)

17  (citation omitted).

18         Similarly, for purposes of California Labor Code violations, to "employ" a worker

19  means: "(a) to exercise control over the wages, hours, or working conditions, or (b) to

20  suffer or permit to work, or (c) to engage, thereby creating a common law employment

21  relationship."  Martinez v. Combs, 49 Cal.4th 35, 64 (2010), as modified (June 9, 2010).

22         Butte County argues that it cannot be held liable for unpaid overtime—it did not

23  have a "right to control or direct any of the activities that made up the alleged

24  employment," so it was not Mr. Navarrette's employer.  Further, even if Butte County was

25  involved in coordinating and scheduling the Cal-Crew program, it cannot be held liable for

26  unpaid overtime where it was unaware of the overtime hours worked.

27         Mr. Navarrette's brief opposing Butte County's motion is filled with additional facts

28  not pleaded in the FAC.  In general, they would show that Butte County employees

1    developed and oversaw the Cal-Crew program.  But none of these additional allegations

2    point toward Butte County having any control over Mr. Navarrette's work schedule or any

3    other type of employer control.

4         Here, Butte County was not Mr. Navarrette's employer.  The FAC and the

5    supplemental allegations (which the court need not consider) identify Butte County as a

6    contracting entity with Five Keys.  None of the allegations, however, tend to demonstrate

7    that Butte County had responsibility for compensating Mr. Navarrette or that Butte County

8    controlled Mr. Navarrette's work schedule.  All the facts show that Five Keys was his

9    employer.  Mr. Navarrette nowhere advances a theory of "joint employment," where he

10   functionally worked for both Five Keys and Butte County.[4]  Despite the alleged contract

11   between Butte County and Five Keys related to the Cal-Crew program in which Mr.

12   Navarrette worked, Butte County did not control the terms of Mr. Navarrette's

13   employment and therefore cannot here be held liable for any alleged violations of federal

14   or state labor laws.  Butte County, because it was not Mr. Navarrette's employer, is

15   dismissed with prejudice.

### 3.    Suffer or Permit to Work

17        As defined in Title 29 U.S.C. § 203(g), "'employ' includes to suffer or permit to

18   work."  "[T]he words 'suffer' and 'permit' as used in the statute mean 'with the knowledge

19   of the employer.'"  Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir.

20   1981) (quoting Fox v. Summit King Mines, 143 F.2d 926 (9th Cir. 1944)).  An employer

21   may still be held liable for unpaid overtime based on constructive knowledge.  Forrester,

22   646 F.2d at 414 (employer liable when it "knows or should have known that an employee

23   is or was working overtime").  Section 207 creates an affirmative obligation to pay

24   overtime even if a worker does not ask to be compensated.  See id. at 414-15 ("employer

25   who is armed with this knowledge cannot stand idly by and allow an employee to perform

26

27   ───────────────
     [4] See Torres-Lopez v. May, 111 F.3d 633, 638 (9th Cir. 1997); see also 29 C.F.R. §
28   791.2(a) ("A single individual may stand in the relation of an employee to two or more
     employers at the same time . . .").

14

United States District Court
Northern District of California

United States District Court
Northern District of California

1    overtime work without proper compensation, even if the employee does not make a claim

2    for the overtime compensation"); see also 29 C.F.R. § 785.11 ("Work not requested but

3    suffered or permitted is work time").

4        Five Keys argues that Mr. Navarrette's overtime claims should both be dismissed

5    because he admits that his supervisors never instructed him to perform overtime work

6    without being paid.  Finding select quotes from the FAC, Five Keys highlights that

7    (1) Five Keys supervisors clearly limited working hours between 6:45am and 3:15 on

8    weekdays; (2) Five Keys supervisors rejected Mr. Navarrette's suggestion to "bank"

9    overtime hours or be paid for working overtime; (3) Five Keys supervisors instructed Mr.

10   Navarrette to work more efficiently within the designated work day in response to his

11   complaints about uncompensated overtime; and (4) Five Keys supervisors repeated this

12   instruction every three to four weeks when Mr. Navarrette requested paid overtime hours.

13   Because an employer cannot be held liable where it is not aware of the overtime hours

14   worked by an employee, Five Keys reasons, Mr. Navarrette cannot sustain a claim for

15   overtime hours not encouraged, approved, or allowed.

16       Mr. Navarrette lists five points in opposition.  First, Mr. Navarrette's supervisors

17   were aware of the hours he worked outside of normal hours because they reviewed daily

18   the "Google Sheets" documents Mr. Navarrette used for his job responsibilities, and they

19   could see the timestamp of his after-hours edits to the documents.  Second, Oscar

20   Garcia (Mr. Navarrette's direct supervisor), when he would fill in for Mr. Navarrette or his

21   colleague, would comment that the job entailed a great deal of daily work and that he

22   could not finish each required task himself within the allotted hours.  Third, when Mr.

23   Navarrette raised with his supervisors the issue of unpaid overtime every three to four

24   weeks, they only responded by promising laptops for use in the field and by shifting

25   responsibilities away from Mr. Navarrette.  Fourth, Mr. Navarrette recounts that on

26   multiple occasions his supervisor said that working off the clock was a part of the "culture

27   of being a supervisor" for Five Keys.  Fifth, Mr. Navarrette describes that he was required

28   to attend multiple weekly meetings outside of normal work hours (including a Thursday

1   resource night and a Friday afternoon supervisors' meeting).

2      Here, Mr. Navarrette's pleading shows that Five Keys had both actual and

3   constructive knowledge of his overtime hours.  It shows that Mr. Navarrette repeatedly

4   (every three to four weeks) informed his supervisors that he was working after the time

5   he was supposed to log off daily and on weekends, all in excess of 40 hours in a week.

6   Despite the supervisors' entreaties for Mr. Navarrette to work more efficiently and to

7   complete his work within the allotted time, they still owed him for the hours suffered if

8   they were aware that he regularly worked overtime and they had constructive knowledge

9   of the overtime hours via timestamps in documents.  Under both federal and state law,

10  Mr. Navarrette is entitled to the unpaid overtime wages for which he can substantiate a

11  claim.

12     Five Keys may not automatically escape liability because Mr. Navarrette was

13  discouraged from incurring the overtime hours.  The deficient pleading of these overtime

14  claims warrants dismissal, but the factual allegations in the FAC do not require dismissal

15  as inconsistent or contrary to law—Mr. Navarrette advances a plausible set of facts that

16  Five Keys was aware of the overtime hours worked.  Therefore, while the second and

17  third claims for overtime pay violations are dismissed as insufficiently pleaded, the court

18  finds that amendment may not prove futile, and thus, leave to amend will be afforded.

19          **D.      Fourth Cause of Action: Title 18 U.S.C.A. § 1116**

20     Title 18 U.S.C.A. § 1116 provides, "Whoever kills or attempts to kill a foreign

21  official, official guest, or internationally protected person shall be punished as provided

22  under sections 1111, 1112, and 1113 of this title."  18 U.S.C.A. § 1116(a).  Subsection (b)

23  defines the terms used in this section, subsection (c) allows for the U.S. to exercise

24  jurisdiction over the offense if the victim is outside the United States in certain

25  circumstances, and subsection (d) allows the Attorney General to request assistance

26  from other agencies to enforce this section.  Id.

27     Mr. Navarrette advances a claim for violation of § 1116 on the theory that

28  defendants violated his rights, freedom, and dignity by failing to appropriately

16

1    compensate him for overtime hours worked.  Such a theory misses that this section is

2    narrowly tailored to punish the killing of a person.  And despite Mr. Navarrette's

3    membership in the Moorish Science Temple of America, he does not adequately allege

4    that he is an "internationally protected person" under U.S. law who was the victim of a

5    killing or attempted killing.  This statute is not implicated where Mr. Navarrette alleges no

6    facts regarding an attempt to kill him.

7           In any event, courts reject any argument that one's status as a Moor gives him or

8    her any special status as a sovereign citizen or internationally recognized person.  Bey v.

9    State, 847 F.3d 559, 561 (7th Cir. 2017) ("Nor is there any basis for his contention that he

10   is not required to pay any taxes because being a Moor makes him a sovereign citizen; he

11   may be a Moor but—we emphasize, in the hope of staving off future such frivolous

12   litigation—he is not a sovereign citizen. He is a U.S. citizen and therefore unlike foreign

13   diplomats has no immunity from U.S. law.") (emphasis in the original); United States v.

14   Coleman, 871 F.3d 470, 476 (6th Cir. 2017) (rejecting argument similar to the "meritless

15   rhetoric frequently espoused by tax protesters, sovereign citizens, and self-proclaimed

16   Moorish-Americans."); Bey v. Gascon, 2019 WL 5191012, at *5 (N.D. Cal. Oct. 15, 2019)

17   (rejecting argument that a court lacked jurisdiction under a "'sovereign citizen' theory

18   because [the party] considers himself a 'Moorish-American National.'"); Bey v. Peltier,

19   2018 WL 1858189, at *3 (C.D. Cal. Jan. 25, 2018), report and recommendation adopted,

20   2018 WL 851291 (C.D. Cal. Feb. 12, 2018) ("Because all of Plaintiff's claims stem from

21   her frivolous assertions regarding her sovereign status and amendment would therefore

22   be futile, the Complaint must be dismissed with prejudice.").

23          Mr. Navarrette is not an internationally protected person.  Therefore, Mr.

24   Navarrette's fourth claim for violation of § 1116 is dismissed.

25   **III.    Dismissal of Individual Defendants**

26          Rule 4(m) requires a plaintiff to serve all defendants in an action within 90 days of

27   its filing.  Fed. R. Civ. Pro. 4(m).  If a plaintiff fails to do so, the court "must dismiss the

28   action without prejudice against [an unserved] defendant or order that service be made

1    within a specified time." Id.  The court must extend the time for service if plaintiff shows

2    good cause for the failure to serve.  Id.

3         Mr. Navarrette filed this action on April 14, 2020.  Dkt. 1.  Thus, he was required to

4    ensure all defendants were served by August 12, 2020.  No summonses were issued for

5    the individual defendants, and they have not otherwise appeared in this lawsuit.

6    Therefore, the court dismisses defendants Garcia and Bates.

7    **IV.    Conclusion**

8         For the above reasons, the court **GRANTS** defendants' motions to dismiss.  The

9    court orders the following with respect to the motions to dismiss.

10             • The § 1983 claim for violation of plaintiff's due process rights is

11                 **DISMISSED WITH PREJUDICE**.

12             • The § 1116 claim for murder or manslaughter of a foreign official is

13                 **DISMISSED WITH PREJUDICE**.

14             • Defendant Butte County was not plaintiff's employer and is therefore

15                 **DISMISSED WITH PREJUDICE**.

16             • The second and third claims for unpaid overtime (29 U.S.C. § 203(1) and

17                 California Labor Code section 510) are **DISMISSED WITHOUT**

18                 **PREJUDICE**.  These two claims are insufficiently pleaded, but the court is

19                 not convinced that amendment would prove futile.

20             • Defendants Garcia and Bates were not served within 90 days of the

21                 initiation of this lawsuit as required by Rule 4(m) and are thus **DISMISSED**

22                 **WITHOUT PREJUDICE**.

23   Going forward, plaintiff may not seek to litigate any claims dismissed with prejudice.

24   Plaintiff may amend his complaint with respect to only the two overtime claims dismissed

25   without prejudice (bulleted immediately above) and as specified in this order.  The court

26   allows plaintiff **28 days** from the date of this order to file a second amended complaint

27   correcting all deficiencies in those two claims.  No new claims or parties may be added

28   without the agreement of defendant or leave of court.

United States District Court
Northern District of California

1

**IT IS SO ORDERED.**

2

Dated: June 10, 2021

3

_/s/ Phyllis J. Hamilton_
PHYLLIS J. HAMILTON
United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California